THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Civil Division

| | |
|---|---|
| ERICA ROSSER, Individually and as Administrator of the Estate of ARMOND LEWIS LANN, Deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLEGHENY COUNTY as owner and operator of JOHN J. KANE REGIONAL CENTER – GLEN HAZEL d/b/a KANE COMMUNITY LIVING CENTER,<br><br>    Defendant. | Civil Action No.: |

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Erica Rosser, Individually and as Administrator of the Estate of Armond Lewis Lann, Deceased, by and through her undersigned counsel, Robert F. Daley, Esquire; Kirstin F. Kennedy, Esquire; Adriana Frontino, Esquire; and the law firm of Robert Peirce & Associates, P.C., and files this Complaint for the Defendant's deprivation of Plaintiff's Decedent's rights guaranteed by the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act, 42 U.S.C. § 1396r, *et seq.*, and the implementing regulations found at 42 C.F.R. § 483, *et seq,* and for violations of the Constitution of the United States of America under Amendment 14, enforceable under 42 U.S.C. § 1983, against the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center, a skilled nursing facility.

1

## Nature of Action

1. This is a proceeding under 42 U.S.C. § 1983 to remedy deprivation of rights guaranteed by the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), the Federal Nursing Home Regulations, as found at 42 C.F.R. § 483, and the Constitution of the United States of America.

## Jurisdiction and Venue

2. As the instant case presents issues of Federal Law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. § 1331.

3. Venue lies within this judicial district, as all the actions complained of herein occurred within the Western District of Pennsylvania.

## Parties

4. Plaintiff Erica Rosser is an adult individual who presently resides at 800 Penn Center Boulevard, Apartment 605, Pittsburgh, Allegheny County, Pennsylvania 15235.

5. Plaintiff Erica Rosser is the daughter of Decedent Armond Lewis Lann.

6. Decedent Armond Lewis Lann died on December 5, 2023 at the age of 74.

7. Plaintiff Erica Rosser was appointed Administrator of the Estate of Armond Lewis Lann by the Allegheny County Department of Court Records on June 11, 2025.

8. Plaintiff Erica Rosser brings this action as the personal representative of Estate of Armond Lewis Lann on her own behalf and on behalf of all those entitled by law to recover damages for the wrongful death of Decedent Armond Lewis Lann.

9. The names and addresses of all personal legally entitled to recover damages for the wrongful death, pursuant to the Pennsylvania Wrongful Death Act of 42 Pa. Const. Stat. § 8301, which these causes of action borrow from, of Decedent Armond Lewis Lann and their relationship to him as follows:

2

| **Name:** | **Address:** | **Relationship:** |
|---|---|---|
| Erica Rosser | 800 Penn Center Blvd. Apartment 605 Pittsburgh, PA 15235 | Daughter |
| Tamika Randall | *Address to be provided* | Daughter |

10. Defendant Allegheny County is a governmental agency with an office located at 436 Grant Street, Pittsburgh, Allegheny County, Pennsylvania, Pennsylvania 15219.

11. John J. Kane Regional Center – Glen Hazel does business under the name Kane Community Living Center at a registered address and principal place of business located at 955 Rivermont Drive, Pittsburgh, Allegheny County, Pennsylvania 15207.

12. Defendant Allegheny County owns and operates John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center.

13. At all times relevant hereto, John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Living Center operated as a "skilled nursing facility" as that term is defined in 42 U.S.C. §1395i-3.

14. At the time of the incidents complained of herein, John J. Kane Regional Center – Glen Hazel Township d/b/a Kane Community Living Center was acting under the control of Allegheny County and was acting by and through its authorized agents, servants, and employees then and there acting within the course and scope of their employment.

15. Defendant Allegheny County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Allegheny County, acting through John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center, was responsible for the customs, policies, practices, supervision, implementation, and conduct of all matters pertaining to the John J. Kane Regional Center – Glen Hazel d/b/a Kane Community

3

Center facility and was responsible for the appointment, training, supervision, and conduct of all John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center personnel.

16. In addition, at all relevant times, Defendant Allegheny County was responsible for enforcing the rules of the John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center facility and for ensuring that personnel employed at the facility obeyed the Constitution and laws of the United States and the Commonwealth of Pennsylvania.

17. Allegheny County, John J. Kane Regional Center – Glen Hazel and John J. Kane Regional Center – Glen Hazel d/b/a Kane Community Center will be referred to as "Kane."

18. At no time during his life did Decedent Armond Lewis Lann bring an action to recover damages for his personal injuries sustained at Kane, and no other action has been filed to recover damages for the wrongful death of Decedent Armond Lewis Lann.

19. The facts relevant to the causes of action stated herein were known, or in the exercise of due diligence, should have been known to Kane during Armond Lewis Lann's residency.

## Statement of Claims

20. Plaintiff incorporates by reference every prior and subsequent allegation as though fully set forth herein.

21. Armond Lewis Lann, 74, was admitted to Kane on December 28, 2016 with a past medical history significant for dementia, arthritis, hypertension, and prostate cancer.

22. At the time of his admission, Mr. Lann was noted to have eloped from the skilled nursing facility where he had previously been admitted.

23. During his elopement, Mr. Lann fell, and, as a result, the nursing staff at Kane were made aware at the time of Mr. Lann's admission of his risk for falling.

24. Because of his history of falling and underlying dementia diagnosis, Mr. Lann required close supervision by the nursing staff at Kane in order to ensure that his needs were met.

25. Despite this, adequate fall prevention measures, including bed and chair alarms, fall mats, and increased supervision, were not put into place for Mr. Lann's care at the time of his admission to Kane.

26. On May 7, 2023, Mr. Lann was found on the floor near his bed after he experienced an unwitnessed fall at Kane. No injuries were noted.

27. In response to this fall, no additional fall prevention measures were put into place by the nursing staff at Kane.

28. Mr. Lann fell for a second time on August 20, 2023.

29. On this occasion, Mr. Lann was again found lying on the floor next to his bed.

30. No injuries were noted, and, again, no additional fall prevention measures were put into place by the nursing staff at Kane.

31. Mr. Lann fell for a third time on August 30, 2023 after he slid out of his bed and was found lying on the floor.

32. No injuries were noted.

33. No additional fall prevention measures were put into place by the nursing staff at Kane.

34. On October 21, 2023 at approximately 12:35 a.m., Mr. Lann was found on the floor in his room after having thrown himself out of bed.

35. Medical records generated by members of the Kane nursing staff specified: "resident threw himself on the floor at 12 AM because his head of bed was at 90-degree angle and his food tray was in front of him."

5

36. It is unclear why Mr. Lann's food tray was still in front of him at midnight, which indicates that no member of the nursing staff had gone in to offer Mr. Lann assistance with his dinner for several hours.

37. This was Mr. Lann's fourth fall at Kane.

38. No injuries were noted.

39. No additional fall prevention measures were put into place by the nursing staff.

40. On October 27, 2023, Mr. Lann was noted to weigh 164 pounds. About two weeks later, the nursing staff at Kane updated Mr. Lann's nutritional Care Plan to include details of his risk for altered nutrition and dehydration due to his underlying dementia diagnosis. Members of the nursing staff were instructed to assist Mr. Lann with eating when needed and monitor both his fluid and food intake as well as his urinary output.

41. On November 6, 2023, Mr. Lann was found lying on his left side on the floor near his bed, which was in an elevated position. This was his fifth fall at Kane.

42. No injuries were noted.

43. In the wake of this fall, the nursing staff were instructed to keep Mr. Lann's bed in the lowest possible position. However, no additional fall prevention measures were put into place by the nursing staff at Kane.

44. Throughout November 2023, Mr. Lann was frequently noted to consume less than half of his meals and inadequate fluid volumes. His urinary output was regularly missing from nursing notations in the Kane medical records. This indicates that the nursing staff at Kane failed to both encourage Mr. Lann to eat, assist him with consumption of food, and monitor his intake and output.

45. On November 13, 2023, Mr. Lann tested positive for COVID-19.

46. While Mr. Lann's vital signs were noted to be stable, it was ordered that the nursing staff at Kane closely monitor him.

47. On the following day, November 14, 2023, there was no urinary output documented for Mr. Lann – meaning the nursing staff at Kane was not closely monitoring Mr. Lann for signs and symptoms of dehydration.

48. Although Mr. Lann's food and water intake continued to decrease over the next few days, no physician was notified of his condition.

49. Again, on November 16, 2023, no urinary output was documented for Mr. Lann.

50. On November 17, 2023, Mr. Lann consumed no food or fluid in the morning. No bowel or urinary output notations were documented in the Kane medical records on that date.

51. Additionally, Mr. Lann was noted to have a low blood pressure of 89/67 with an elevated heart rate of 150 beats per minute. His oxygen saturations were decreased at 89 percent and his respiratory rate was elevated.

52. Mr. Lann was described as lethargic and, as a result, he was sent to UPMC Mercy Hospital for evaluation.

53. In the Emergency Department at UPMC Mercy Hospital, Mr. Lann was noted to have presented with an irregular heart rate. He was positive for COVID-19 and was noted to have a severe acute kidney injury and severe hypernatremia (i.e., too much sodium), both of which are indicative of dehydration.

54. As a result, Mr. Lann was admitted to the hospital for treatment.

55. Once admitted, Mr. Lann began receiving intravenous fluids to treat his condition.

56. A palliative care physician evaluated Mr. Lann in the hospital and noted he had severe constipation in addition to his admitting diagnoses, which was attributed to a poor oral intake.

57. Mr. Lann began receiving hemodialysis treatments in the hospital, and a feeding tube was placed to assist with his nutritional needs.

58. Mr. Lann was additionally noted to be in renal failure.

59. By December 1, 2023, Mr. Lann began having regular bowel movements; however, he was unable to feed himself due to the progression of his dementia.

60. As a result, he was discharged back to Kane with the support of hospice services.

61. Mr. Lann remained on hospice for a few days and died on December 5, 2023 due to renal failure and progressive dementia.

62. During the course of Mr. Lann's admission to Kane, his dementia progressed such that he was unable to keep himself safe from falls. Despite knowledge of this condition, the nursing staff at Kane failed to implement adequate fall protection measures for the purpose of keeping Mr. Lann safe.

63. Additionally, Mr. Lann became progressively unable to take in the necessary amounts of food and water. While the nursing staff at Kane recognized Mr. Lann's risk for inadequate nutrition and hydration, they failed to assist him in intaking food and water and failed to adequately monitor his output.

64. As a result, Mr. Lann developed a severe acute kidney injury, renal failure, and hypernatremia due to the malnourishment and dehydration he developed at Kane. These injuries were preventable with close supervision, monitoring, and assistance – all of which he did not receive while admitted at Kane.

## Kane's Profit from Understaffing

65. Kane gains much of its revenue and profit from taxpayer dollars by participating in federal and state-funded Medicare and Medicaid programs.

66. In the Medicare/Medicaid system, every nursing home resident is assigned an "acuity" level which reflects the number and severity of that resident's medical conditions and illnesses.

67. A resident with a higher acuity level places a greater demand for care and services on a nursing home and its staff.

68. Skilled nursing facilities, like Kane, use acuity levels to bill Medicare/Medicaid for reimbursement of daily care and services.

69. Medicare/Medicaid reimburses nursing facilities at a higher rate for care and services based on each resident's acuity rate and number of therapy minutes provided to that resident.

70. Accordingly, the higher the facility's acuity levels, the more revenue the facility will generate from Medicare/Medicaid.

71. This creates a financial incentive for nursing homes, such as Kane, to admit and keep residents with greater mental, physical, and psychological needs.

72. Every year, skilled nursing facilities (including Kane) must submit a Medicare Cost Report to The Centers for Medicare and Medicaid Services ("CMS"), in which the facility must account for each dollar received and spent.

73. A resident's acuity level is used by CMS to determine the number of hours the nursing home is expected to provide each day to meet resident needs.

74. CMS then pays the facility according to the hourly rate of reimbursement for the expected number of nursing hours required for each resident.

9

75. At the end of each fiscal quarter, the nursing home must provide CMS with an accounting of the hours it actually spent providing nursing care to residents.

76. To calculate nursing hours, facilities, such as Kane, add us the hours spent providing care to residents by Registered Nurses ("RNs"), Licensed Practical Nurses ("LPNs"), and nursing aides.

77. Throughout 2023, Kane failed to provide sufficient and expected licensed care to its residents (i.e., care provided by RNs and LPNs) or expected aide care to its residents.

78. In 2023, based on the acuity of its residents, Kane provided fewer nursing hours to residents than the anticipated minimum staffing promulgated by CMS.

79. According to CMS reporting, by staffing below the anticipated minimum in 2023, Kane saved at least $2,482,482.

80. Kane was understaffed during the first three quarters of 2023. Understaffing at Kane during this period fell between the following values, at a minimum:

    a. Quarter One: understaffed at a value of at least -5.2%;

    b. Quarter Two: understaffed at a value of at least -8%; and

    c. Quarter Three: understaffed at a value of at least -1.1%.

### COUNT I
### Deprivation of Civil Rights Enforceable Via 42 U.S.C. § 1983
### SURVIVAL
*Plaintiff v. All Defendants*

81. Plaintiff incorporates by reference every prior and subsequent allegation as though fully set forth herein.

82. Defendant is an agent of the Commonwealth of Pennsylvania and, at all times relevant to this Complaint, acted under the color of state law.

83. Defendant is bound generally by OBRA and FNHRA, which were contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

84. Defendant is also bound generally by OBRA and FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

85. The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these statutes as defined and amplified by the regulations clearly and unambiguously creates those rights. Grammar v. John J. Kane Regional Centers Glen Hazel, 570 F.3d 520 (2009); Health and Hospital Corporation of Marion County v. Talevski 599 U.S. 166 (2023).

86. Upon information and belief, Defendant, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, failed to implement and follow appropriate custom and policies and/or, in the alternative, had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

87. Defendant, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the aforementioned regulations, as follows:

    a. By failing, as a custom and policy, to care for patients, including Armond Lewis Lann, in a manner that promoted maintenance or enhancement of his life, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A), as pled herein;

    b. By failing, as a custom and policy, to provide residents, including Armond Lewis Lann, the necessary care and services to allow him to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

c. By failing, as a custom and policy, to periodically review and revise patients' or residents' written Care Plans, including Armond Lewis Lann, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

d. By failing, as a custom and policy, to conduct an assessment of patients or residents, including Armond Lewis Lann, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

e. By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising patients' or residents', including Armond Lewis Lann's Care Plan, as required by 42 U.S.C. § 1396r(b)(3)(D);

f. By failing, as a custom and policy, to ensure that patients and/or residents, including Armond Lewis Lann, were provided medically related social services to attain or maintain the highest practicable physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

g. By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents, including Armond Lewis Lann, was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

h. By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Armond Lewis Lann, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

i. By failing, as a custom and policy, to ensure that Neshaminy Manor was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Armond Lewis Lann, to attain or maintain their highest practicable level of physical, mental, and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A), 42 U.S.C. § 1396r(d)(1)(A), and 42 U.S.C. § 1396r(d)(1)(C);

j. By failing, as a custom and policy, to ensure that the administrator of Kane met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

k. By failing, as a custom and policy, to develop and implement written policies and procedures that prohibit the mistreatment, deliberate indifference, and abuse of residents such as Armond Lewis Lann, as required by 42 U.S.C. § 483.12 and 42 U.S.C. § 1396r(b)(1)(A);

l. By failing, as a custom and policy, to ensure that Neshaminy Manor was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Armond Lewis Lann, and in operating such a facility as Kane, as required by 42 U.S.C. § 1396r(d)(4)(A);

m. By failing, as a custom and policy, to ensure Kane's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Armond Lewis Lann, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B); and

n. By depriving, as a custom and practice, Residents' rights established by the Secretary of the Department of Health and Human Services, pursuant to 42 U.S.C. § 1396r(c)(xi), including:

    1. The right to a dignified existence pursuant to 42 C.F.R. § 483.10(a);

    2. The right to be treated with respect and dignity, and the right to care in a manner that promotes maintenance or enhancement of his or her daily life, pursuant to 42 C.F.R. § 483.10(a)(1);

    3. The right to be informed of and participate in treatment, including with respect to the implementation and modification of care plans, pursuant to 42 C.F.R. § 483.10(c), (c)(2), and (c)(5);

13

   4.  The right to be treated with respect and dignity, pursuant to 42 C.F.R. § 483.10(e); and

   5.  The right to a safe environment, including by not limited to receiving treatment and support for daily living safety, pursuant to 42 C.F.R. § 483.10(i)(2)(i).

  88.  The aforementioned violations indicate that Defendant, as a policy and/or custom was deliberately indifferent to the needs of Decedent Armond Lewis Lann, and as such, and in conjunction with other conduct described herein, deprived him of federally guaranteed and protected rights.

  89.  The repeated and systemic failures in the preceding Paragraphs, combined with the failures identified in Paragraphs 41 (a)-(m) demonstrate that Defendant, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, failed to implement and follow appropriate customs and policies and/or, in the alternative, had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

  90.  As a proximate result of actionable derogation by Defendant of its regulatory and statutory responsibilities as above-described, Decedent Armond Lewis Lann, was injured as previously referenced and suffered pain and distress as a result of the poor care and treatment which allowed him to suffer harm, as described herein.

  91.  As such, Decedent Armond Lewis Lann, suffered, and his Estate is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988:

   a.  Money expended for hospital, medical, surgical, and nursing expenses incident to the injuries that Armond Lewis Lann suffered as a result of the treatment and care rendered by Kane until the time of his death;

      b.      Pain, suffering, embarrassment, humiliation, inconvenience, anxiety, loss of enjoyment of life, and nervousness Armond Lewis Lann; and

      c.      Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Erica Rosser, Individually and as Administrator of the Estate of Armond Lewis Lann, Deceased, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel, in an amount in excess of Seventy-Five Thousand Dollars, plus interest, costs of suit, and attorneys' fees.

## COUNT II
### Deprivation of Civil Rights Enforceable Via 42 U.S.C. §1983
### WRONGFUL DEATH
*Plaintiff v. All Defendants*

92. All of the preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

93. As a proximate result of actionable derogation by Defendant of its regulatory and statutory responsibilities as above-described, Decedent Armond Lewis Lann was injured as previously referenced, and suffered pain, distress, and death as a result of the poor care and treatment he received.

94. As such, Plaintiff Erica Rosser and all Wrongful Death beneficiaries have suffered and are entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

      a.      Money for funeral and estate expenses incurred because of the death of Armond Lewis Lann;

      b.      Damages for the lost services, assistance, guidance, counseling, and companionship of Armond Lewis Lann;

15

      c.      Financial support and all pecuniary benefits which would have been received from Armond Lewis Lann;

      d.      The expenses of administration; and

      e.      Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Erica Rosser, Individually and as Administrator of the Estate of Armond Lewis Lann, Deceased, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel, in an amount in excess of Seventy-Five Thousand Dollars, plus interest, costs of suit, and attorneys' fees.

## COUNT III
### Violations of the United States of America's Constitution Under Amendment Fourteen for Injury to Human Dignity Enforceable Via 42 U.S.C. §1983
### SURVIVAL
*Plaintiff v. All Defendants*

95. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

96. During the residency of Decedent Armond Lewis Lann, Defendant deliberately and/or with deliberate indifference failed to properly care for him, causing him to suffer an injury to human dignity.

97. Specifically, Defendant allowed Decedent Armond Lewis Lann to remain in a state that was hazardous to his health and well-being.

98. These violations interfere with Decedent Armond Lewis Lann's rights under the Fourteenth Amendment to the Constitution of the United States of America.

99. During its treatment of Decedent Armond Lewis Lann, Defendant acted pursuant to a state right or privilege, and as such was a state actor.

100. While a patient at the Defendant facility, Decedent Armond Lewis Lann had a serious medical need, and the deliberate and deliberately indifferent acts and omissions of the staff at Kane indicated deliberate indifference to his medical needs.

101. Decedent Armond Lewis Lann was dependent upon Defendant and its staff for a significant amount of his activities of daily living, nursing care, and treatment needs.

102. Defendant and its staff were deliberately indifferent to Decedent Armond Lewis Lann because it knew that he faced a substantial risk of serious harm and it failed to take reasonable steps to avoid the harm.

103. As a proximate result of the failure of Defendant to act properly as above-described, Decedent Armond Lewis Lann suffered an injury to human dignity as previously referenced and suffered pain, distress, and death as a result of the poor care and treatment given to him, allowing him to develop the injuries and suffer death as referenced herein.

104. As such, Decedent Armond Lewis Lann, suffered, and his Estate is now entitled to recover the following damages, the following damages:

    a.    Pain, suffering, inconvenience, anxiety and nervousness of the Armond Lewis Lann until the time of his death;

    b.    Hospital, medical, surgical and nursing expenses incurred on Armond Lewis Lann's behalf;

    c.    Attorney's fees and costs;

    d.    Other losses and damages permitted by law; and,

    e.    Any other damages as the Court sees fit to award.

WHEREFORE, the Plaintiff, Erica Rosser, Individually and as Administrator of the Estate of Armond Lewis Lann, Deceased, demands compensatory damages from the Defendant Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel, in an

amount in excess of Seventy-Five Thousand Dollars, plus interest, costs of suit, and attorneys' fees.

### COUNT IV
### Violations of the United States of America's Constitution Under Amendment Fourteen for Injury to Human Dignity Enforceable Via 42 U.S.C. §1983
### WRONGFUL DEATH

*Plaintiff v. All Defendants*

105. All preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

106. As a proximate result of the actionable derogation by Defendant of its regulatory and statutory responsibilities as above-described, Decedent Armond Lewis Lann was injured as previously described and suffered pain, distress and death as a result of the injuries to his human dignity.

107. As such, Plaintiff Erica Rosser and all Wrongful Death beneficiaries have suffered, and are entitled to recover for, the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988:

    a. Money for funeral and estate expenses incurred because of the death of Armond Lewis Lann;

    b. Damages for the lost services, assistance, guidance, counseling, and companionship of Armond Lewis Lann;

    c. Financial support and all pecuniary benefits which would have been received from the Decedent;

    d. The expenses of administration; and,

    e. Other losses and damages permitted by law.

WHEREFORE, the Plaintiff, Erica Rosser, Individually and as Administrator of the Estate of Armond Lewis Lann, Deceased, demands compensatory damages from the Defendant

Allegheny County, as owner and operator of John J. Kane Regional Center – Glen Hazel, in an amount in excess of Seventy-Five Thousand Dollars, plus interest, costs of suit, and attorneys' fees.

**A JURY TRIAL IS DEMANDED.**

                                          Respectfully submitted,

                                          ROBERT PEIRCE & ASSOCIATES, P.C.

                                          By:*/s/ Robert F. Daley*
                                             ROBERT F. DALEY, ESQUIRE
                                             Counsel for Plaintiff
                                             P.A. ID No.: 81992
                                             Robert Peirce & Associates, P.C.
                                             437 Grant Street, Suite 1100
                                             Pittsburgh, PA 15219
                                             (412) 281-7229
                                             bdaley@peircelaw.com